Hillsborough-northern judicial district
No. 97-688

JEFFREY BINDA

v.

ROYAL INSURANCE COMPANY

January 31, 2000

*Hall, Hess, Kenison, Stewart, Murphy & Brown, P.A.*, of Manchester (*Francis G. Murphy, Jr.* and *Eugene R. Quinn, Jr.* on the brief, and *Mr. Murphy* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Daniel E. Will* and *Andrew D. Dunn* on the brief, and *Mr. Will* orally), for the defendant.

*Borofsky, Lewis, Amodeo-Vickery, P.A.* of Newington (*Mark S. Gearreald* on the brief and orally), for the intervenors, Robert E. and Cathleen E. Mark.

BRODERICK, J. The plaintiff, Jeffrey Binda, appeals a ruling of the Superior Court (*Abramson*, J.) dismissing his declaratory judgment petition as untimely because it was filed beyond the six-month limitations period provided under RSA 491:22 (1997). We reverse and order that Binda shall have sixty days from the date of this opinion to file a declaratory judgment petition on the December 1996 amended writ.

I

The incident giving rise to this dispute occurred at a residence in Hampton in which Binda allegedly assaulted intervenor Robert E. Mark, the police chief for the Town of Hampton. By writ returnable in September 1995, Mark and his wife Cathleen sued Binda, alleging that he "engaged in a course of willful, wanton and reckless conduct towards [Robert Mark]" in that he "charge[d]" Mark, "[struck Mark] in his chest and face, breaking his dentures and nearly sending him over the porch railing." By letter dated March 19, 1996, the defendant, Royal Insurance Company (Royal), acknowledged receipt of the writ, warned Binda that his alleged conduct could be considered intentional and thus not subject to coverage, and advised him that it would conduct an investigation under a reservation of rights to determine coverage. On May 16, 1996, Royal wrote to Binda and denied coverage based on the intentional nature of his alleged conduct. In October 1996, the Marks filed a motion to amend their writ to charge Binda with negligence based on the same underlying factual allegations. On November 15, 1996, Binda filed a petition for declaratory judgment seeking coverage and a defense under two Royal policies. On December 16, 1996, the Trial Court (*Gray*, J.) granted the Marks' motion to amend their writ.

In February 1997, Royal moved to dismiss Binda's declaratory judgment petition as untimely under RSA 491:22. The trial court granted the motion, ruling that the "facts giving rise to the coverage dispute were known to Binda in March 1996 when he received the initial letter from Royal" and that he filed his declaratory judgment petition more than six months thereafter. In denying the Marks'

motion to reconsider, the trial court further ruled that the amended writ did not change its analysis because the six-month limitations period expired approximately a month before the intervenors filed their motion to amend in October 1996 and the amended writ did not change the "substance of the specific factual allegations" in the original writ.

On appeal, Binda argues that: (1) the six-month limitations period was triggered when Royal denied coverage in May 1996; and (2) the Marks' amended writ served to restart the six-month period. We address each argument in turn.

## II

We first address Binda's argument that the trial court erred in concluding that the March 1996 letter gave him notice of a coverage dispute. Binda asserts that the trial court expanded the statutory term "coverage dispute" to include potential, hypothetical coverage disputes that may or may not arise. He argues that he did not know nor reasonably could have known of "facts giving rise to [the] coverage dispute" as required by RSA 491:22, III until May 1996, when Royal actually denied coverage. We disagree, and assume without deciding that the underlying writ itself did not provide Binda with the necessary notice.

RSA 491:22, III states in pertinent part:

> No [declaratory judgment] petition shall be maintained . . . to determine coverage of an insurance policy unless it is filed within 6 months after the filing of the writ, complaint, or other pleading initiating the action which gives rise to the question; provided, however, that the foregoing prohibition shall not apply where the facts giving rise to such coverage dispute are not known to, or reasonably discoverable by, the insurer until after expiration of such 6-month period; and provided, further, that the superior court may permit the filing of such a petition after such period upon a finding that the failure to file such petition was the result of accident, mistake or misfortune and not due to neglect.

This statute "does not set forth a discovery rule such that the six-month period begins to run from the date of the discovery of the facts giving rise to the dispute over insurance coverage." *Hartford Ins. Co. v. Bird*, 124 N.H. 784, 786, 480 A.2d 4, 5 (1984). Rather, the six-month period runs from the date the underlying writ is filed.

*Quincy Mutual Fire Ins. Co. v. Croteau*, 127 N.H. 676, 678, 506 A.2d 303, 305 (1986). If, however, the facts giving rise to a coverage dispute are not known or reasonably discoverable until after the expiration of the six-month period, then a declaratory judgment petition may still be filed within a reasonable time frame (late discovery exception). *Hartford Ins. Co.*, 124 N.H. at 786, 480 A.2d at 5. Because it is not disputed that Binda received notice of the March 1996 letter and filed his petition for declaratory judgment beyond the expiration of the six-month period, the late filing is not prejudicial only if the late discovery exception applies. Application of the "accident, mistake or misfortune" exception under RSA 491:22, III is not before us.

This case turns on our interpretation of the phrase "facts giving rise to [a] coverage dispute" under RSA 491:22, III. *Cf. N.H. Ins. Guaranty Assoc. v. Pitco Frialator*, 142 N.H. 573, 576, 705 A.2d 1190, 1192 (1998) (statutory interpretation is to be decided ultimately by this court). To adopt Binda's interpretation would render superfluous the qualifying language "facts giving rise to." *See id.* at 578, 705 A.2d at 1193 (legislature is presumed not to have used superfluous words). The statute does not, as Binda suggests, require an actual denial of coverage by an insurer before an insured must seek a determination of coverage or risk being time-barred. Rather, the language "giving rise to" demonstrates that the statute requires only that the insured know or be able to reasonably discover facts which form the basis of a coverage dispute. While, certainly, an insurer's denial of coverage would apprise an insured of "facts giving rise to [a] coverage dispute," *see Mottolo v. U.S. Fidelity & Guaranty Co.*, 127 N.H. 279, 283, 498 A.2d 760, 764 (1985), the broad language of the statute embraces triggering circumstances short of this ultimate act. With this in mind, we review the March 1996 letter to determine whether it alerted Binda to "facts giving rise to [a] coverage dispute."

In its March 1996 letter, Royal represented that it would conduct an investigation to determine coverage under a reservation of rights. It specifically stated that its policies "[did] not provide liability coverage for injuries which are either expected or intended from the standpoint of the insured," and that the writ alleged that Binda "'engaged in a course of willful, wanton and reckless conduct.'" Royal advised Binda that the allegations against him could be considered to be intentional and therefore not covered, and that his failure to provide prompt notice of the claim as required by the policies may have prejudiced its ability to investigate. Royal concluded its letter by refusing to provide a present defense to

Binda while stating that it "[would] conduct [an] investigation . . . and notify [Binda] of [its] decision [on] . . . coverage as soon as possible." Binda parses out this last statement and argues that Royal "lulled [him] into believing that there was nothing he could do until [Royal] completed its investigation and made a decision on the coverage issue." We conclude, however, that considered in its entirety, the letter clearly notified Binda of "facts giving rise to [a] coverage dispute," and thus triggered Binda's duty to file a declaratory judgment petition within a reasonable time. *See Hartford Ins. Co.*, 124 N.H. at 786, 480 A.2d at 5.

■ Binda argues that filing a declaratory judgment action in response to the March 1996 letter would have been premature because a claim of right and a claim adverse to that right are prerequisites to a petition for declaratory judgment under RSA 491:22, I, and the superior court is not permitted to render advisory opinions. We disagree. A declaratory judgment action pursued after Binda's request for coverage and Royal's response in March 1996 would not have been based on hypothetical or speculative facts. *Cf. Delude v. Town of Amherst*, 137 N.H. 361, 363-64, 628 A.2d 251, 253 (1993). Royal's denial of coverage was not necessary to render declaratory relief justiciable. *See Wuelper v. University of N.H.*, 112 N.H. 471, 473, 298 A.2d 747, 749 (1972). In fact, by its very nature, a declaratory judgment action "can be brought before an actual invasion of rights has occurred [and] is intended to permit a determination of a controversy before obligations are repudiated and rights invaded." *Portsmouth Hospital v. Indemnity Ins. Co.*, 109 N.H. 53, 55, 242 A.2d 398, 400 (1968). The defending party need only perform "some act [that is] sufficiently definite to constitute a genuine threat or prejudice to the plaintiff's interests." *Merchants Mut. &c. Co. v. Kennett*, 90 N.H. 253, 255, 7 A.2d 249, 250 (1939) (quotation omitted). We conclude that Royal's March 1996 letter satisfied the adverse claim prerequisite.

Our inquiry does not end here, however. While RSA 491:22, III permits an insured to file a declaratory judgment action when that insured learns of "facts giving rise to [a] coverage dispute" more than six months beyond the filing of the underlying writ, it does not provide a particular time period for doing so. We have previously determined that reasonableness governs the viability of the declaratory judgment action when the late discovery exception applies. *See Hartford Ins. Co.*, 124 N.H. at 786, 480 A.2d at 5. Even though the trial court failed to conduct a reasonableness inquiry, we need not remand this issue because we conclude that filing a declaratory

judgment action more than six months beyond discovery of the pertinent facts underlying the coverage dispute is not reasonable as a matter of law.

"The remedy of declaratory judgment is provided for the purpose of making a controversy over a legal or equitable right justiciable at an earlier stage of the controversy than it would be if the matter were pursued in an action at law or in equity." *Jackson v. Federal Ins. Co.*, 127 N.H. 230, 232, 498 A.2d 757, 759 (1985) (quotations omitted). The time limitation provided in RSA 491:22, III serves to prevent belated declaratory judgment petitions from unfairly impeding the progress of the underlying writ, *Fireman's Fund Am. Ins. Cos. v. Webber*, 112 N.H. 466, 467, 298 A.2d 745, 747 (1972), and to allow the courts to "deal with all questions relating to a dispute litigated before them," *Jackson*, 127 N.H. at 233, 498 A.2d at 759.

■ The legislature, in its judgment, determined that allowing six months from the filing of the underlying writ generally strikes a fair balance of the competing interests involved in the pursuance of a declaratory judgment action. Binda filed his declaratory judgment petition nearly eight months after the March 1996 letter, and thus well beyond the prescribed six-month period. While Binda's late discovery of "facts giving rise to [the] coverage dispute" permitted him to file beyond the six-month period, we conclude that granting him two months more than the generally accepted six-month time frame would be unreasonable as a matter of law. We are convinced our position is proper because a party learning of events giving rise to a coverage dispute *within* the six-month period is still bound by that period, and thus may have *less* than six months to file a declaratory judgment action depending on the date of discovery. *See Quincy Mutual Fire Ins. Co.*, 127 N.H. at 678, 506 A.2d at 305 (insurer bound by six-month limitations period despite discovery of events giving rise to coverage dispute in fifth month). Accordingly, the late discovery exception under RSA 491:22, III does not help Binda in this case.

## III

We next address Binda's argument that the Marks' December 1996 amended writ served to restart the six-month limitations period. While acknowledging that the amended writ was "based on the same nucleus of operative facts," Binda asserts that it "sets forth significant new claims against [him]" sufficient to trigger a new six-month limitations period. Royal contends that an amended writ can serve to restart the six-month limitations period only if it

alleges new facts which raise a coverage dispute for the first time. It argues that the amended writ fails to meet this standard because it alleges no new facts and "simply recasts the same intentional conduct . . . in the original Writ as negligence."

We have had limited occasion to address when an amended writ triggers a new six-month limitations period under RSA 491:22, III. *See Mottolo*, 127 N.H. at 284, 498 A.2d at 764; *National Grange Mut. Ins. Co. v. Watterson*, 120 N.H. 141, 143-44, 412 A.2d 1007, 1009 (1980). In reviewing the amended writ, our primary focus was whether new allegations raise distinct issues of coverage not previously raised under the original writ. *See Mottolo*, 127 N.H. at 284, 498 A.2d at 764; *National Grange Mut. Ins. Co.*, 120 N.H. at 144, 412 A.2d at 1009. While our analysis in prior cases has turned on whether the amended writ alleged new facts raising distinct issues of coverage, it is equally plausible for new legal allegations to raise coverage issues for the first time. *See National Grange Mut. Ins. Co.*, 120 N.H. at 144, 412 A.2d at 1009 (while original writ alleged that insured "violently threw him upon the ground from atop the truck he was standing on," amended writ alleging negligence claim and no new facts regarding liability raised new coverage issue regarding negligence). Therefore, we conclude that an amended writ triggers a new six-month limitations period under RSA 491:22, III when new factual or legal allegations change the cause of action in a manner that raises a coverage issue for the first time. Applying this revised standard to the present case, we conclude that Marks' negligence claim in the December 1996 amended writ triggered a new six-month limitations period for Binda to file a declaratory judgment petition addressing coverage disputes not fairly raised by the facts pled in the original writ. *See id.*

The amended writ alleges that Binda was negligent in that he "charg[ed] Plaintiff Robert E. Mark and str[uck] Plaintiff in his chest and face, breaking his dentures and nearly sending him over the porch railing." While the amended writ alleged no new facts pertaining to liability or damages, the negligence claim raised for the first time the question whether Royal insured Binda for his alleged negligent conduct. It does not simply mirror issues of responsibility and liability, but changes the cause of action in a manner that creates a new coverage issue, especially since the factual allegations arguably constitute unintentional conduct. *Cf. Mottolo*, 127 N.H. at 284, 498 A.2d at 764 (indemnity action could not retrigger six-month period because it did not allege new facts

raising distinct issues of coverage and merely reiterated issues of responsibility and liability).

Relying on *Green Mountain Insurance Co. v. Foreman*, 138 N.H. 440, 641 A.2d 230 (1994), Royal argues that permitting the amended writ to trigger a new limitations period would effectively "elevate form over substance." *In Green Mt. Ins. Co.*, we determined that a negligence count seeking recovery for unintended injury based on an "intentional punch" as alleged in the writ did not trigger the insurer's duty to defend because no "reasonable intendment of the pleadings" allowed for insurance coverage for the alleged intentional act. *Green Mt. Ins. Co.*, 138 N.H. at 443, 641 A.2d at 233. That holding is inapplicable here. The negligence count in *Green Mt. Ins. Co.* was based on an alleged "intentional punch," so there was no room for a viable coverage dispute; the Marks' negligence claim is based on Binda's alleged act of "charging" Robert Mark and "striking [him] in his chest and face," which arguably constitutes unintentional conduct.

■ Because the December 1996 amended writ raised for the first time the question whether Royal insured Binda for his alleged negligent conduct, it afforded Binda a new six-month limitations period under RSA 491:22, III to file a new declaratory judgment petition. While the trial court correctly concluded that the amended writ did not save or revive the otherwise untimely declaratory judgment petition filed on the original writ, its conclusion that the amended writ did not change "the substance of the specific factual allegations" ostensibly foreclosed Binda from filing a new petition on the amended writ. Our decision today, however, supplements the prior cases addressing when an amended writ triggers a new six-month limitations period under RSA 491:22, III to include new legal allegations that raise distinct coverage issues. Accordingly, we reverse, and hold that Binda has sixty days from the date of this opinion to file a declaratory judgment petition on the December 1996 amended writ. Coverage disputes fairly raised in the original writ, however, may not be challenged in a petition for declaratory judgment on the amended writ. *See National Grange Mut. Ins. Co.*, 120 N.H. at 144, 412 A.2d at 1009.

Finally, we observe that on December 31, 1997, the Trial Court (*Gray*, J.) granted the Marks' motion to further amend their writ to identify the precise injuries they suffered as well as those injuries suffered as a "secondary consequence" of Binda's alleged conduct. The intervenors argue that the second amended writ serves to retrigger the six-month period for Binda to file a declaratory

judgment petition. This issue was not adjudicated below, included in the notice of appeal, or added to the notice of appeal as an additional question. Accordingly, the impact of the second amended writ on Binda's ability to timely file a declaratory judgment petition is not part of the present appeal, and we will not address it.

> *Reversed and ordered that Binda has sixty days from the date of this opinion to file a declaratory judgment petition on the December 1996 amended writ.*

All concurred.